and others on that side too. You may come forward Mr. Russell you can kind of wait for them to get set and come forward. Go ahead. May I please the court by first addressing any questions that either of you may have? Why don't you let us catch our breath and okay. Well one of the first issues presented before this court that we say that the district court aired on was the fact was that the plaintiffs failed to allege a duty against any of the defendants. Okay if you look at the plaintiffs petition they allege that the defendants failed to use reasonable care in manufacturing and producing neoprene and chloroprene and that failure to use reasonable care is what caused the plaintiffs injuries. Okay when I say failure to use reasonable care we're talking about this universal duty under the general tenor of 2315 point what 2315 that says that when you engage in an activity in Louisiana whether it's driving your vehicle or mowing the grass when you engage in an activity you have to use reasonable care to prevent injury. Okay unless we certify this question to the Louisiana Supreme Court is there any difference in this case from Butler that would save your argument on this point? Well I believe that this court had honed in on the Rando case when this issue was presented in Butler but we also cited many other cases Rathle versus Broderick EMS and Davis versus Witt which the reason I don't mention that is because in these cases the courts point out that it's important to look at the circumstances of each case and under those circumstances the question is whether or not the defendant... But was the duty the layman duty pled differently than in Butler and then in this complaint was it pled differently? Yes it was. Well the way it was pled here is aside from the duties that to use reasonable care under 2317 part 1 which that statute specifically states that that's standard of care the duty to use reasonable care to prevent injury to others that is the custodial liability statute and also in 2322 that same duty is also provided in that statute. Right. So in our petition. Well I'm asking about the complaint the comparison but I guess the real question I've got is on January 12th opposing counsel notice to us the indicative ruling of now deceased Judge Feldman. And along with that they moved to remand. Am I correct. You never responded to that. No they said they hadn't been able to reach you I think. Or maybe I'm wrong. You think there were 228 days that also were submitted along with that same request. Am I correct. You didn't respond to those. We didn't file an opposition. But they did contact my office and I did voice our objection to it. But so what's the the the outstanding indicative ruling and motion to remand. You have not yet given your viewers to that. OK. Do you agree that rule 63 would apply. In other words Judge Feldman tragically is no longer able. We have a successor judge. Correct. Correct. OK. So is that judge bound by Judge Feldman's ruling is Judge Feldman's ruling a nullity. Is it moot or does he have discretion to consider it and follow it. But the judge has discretion to consider it. That's what I thought. It's not binding on him. It must apply in Louisiana substantive law. But the ruling. The reason I'm asking is this is you you all no fault of your own. You appealed from a June dismissal. Butler doesn't come down until after principal your principal briefs file. So both sides agreed to stay for Butler. Right. Correct me if I'm wrong. It ends end of this chronology. Right. OK. And then Butler comes down. And so they file for an indicative ruling and they move to remand for it. And I'm asking you why wouldn't that be the appropriate. I know they're asking us to straight affirm. But why wouldn't it be appropriate to remand for the court to now apply Butler. You win on prescription and you're right. You can convince them that Judge Feldman's indicative ruling isn't persuasive or not. But that's where it ought to be right. And I think the proper ruling would to be would be to certify it to the Louisiana Supreme Court. But why not. What I've just said. We've got an indicative ruling. We have a successor judge. He's not bound by it but he would give it deference. You could argue against it. We have an outstanding motion. Why isn't that maybe not be exactly what either of you are asking for. But what's wrong with that. Yeah. I mean I think that this new judge could make and you can make a ruling and apply. Why is it for the judge to rule that we can't rule on. In other words there's no facts for the judge to find that we need to remand for. Right. No. I mean it's an arguendo that Butler applies here and we don't. I mean and it's then there's nothing for that judge to rule on that we can't rule on here that your opponent has argued that Butler applies and therefore you lose. And you're saying no you need to certify to Louisiana Supreme Court. That's something we can decide here. Right. Yeah. And the reason I say that. If you did certify to Louisiana Supreme Court that would put Butler potentially aside or potentially support Butler and we would have to see what was said. Exactly. And Judge Higginson the reason I say that is because there was a question that remained open in Butler which was whether or not whether or not the plaintiffs alleged a duty against Dinka and DuPont as a producer of the chemicals that we alleged they produced. And we're saying that the Louisiana Supreme Court has ruled on that issue and they have set forth the duty. But if this court needs a pronouncement from Louisiana Supreme Court of that duty it should be certified to Louisiana Supreme Court to decide because otherwise it could be sent back to the federal district court when Louisiana has already ruled on it and the federal district court apply a separate duty completely separate. Is your argument is that argument for certification any different than the en banc petition in Butler's argument that our court denied. I believe that here. The reason the reason in Butler that we argued for certification was that you wanted to prevent the federal courts from from ruling that there was a certain duty. That may be inconsistent with the duty provided in state court. OK. But here we're saying that the denial of an en banc is not precedential. No I'm just asking is there any argument you're making for us found that is different than the argument that was made to the en banc court. So I think I think the argument we made in the petition that you're referring to judge was an inconsistency argument based on different pronouncements in state court versus federal court. The argument I'm making here is that that duty question apparently remains open and questionable to this court. And because that remains open and questionable to this court and it has such implications as far as this court's ruling or the dismissal of my client's claims it should be sent to state court to for the state court. And therefore if we do certify I mean of course two or three of us were on the prior panel and there was a dissent that you hadn't failed to plead a case but to said you had on the other hand on the prescription it went the other way. You prevailed two to one. If we were to choose to certify this I assume the whole case goes to the Louisiana Supreme Court. They could revisit your prescription issue. Yes. And we believe that that's in the whole case to the Louisiana Supreme Court. Well I say that the question of duty as to whether or not. Why not the question that they lost state law question. If the court wants to decide to do that I'll be fine. I mean we believe that nobody asked for that. No no no one has moved this court in Butler was no one had asked for certification in the panel. The majority of the panel did not want to do it. So it's fine. But now you have asked the other side hasn't asked on the prescription. That doesn't mean we can't do it. We can do it. So it's fine. OK. But we don't we certainly can do one and not the other. Right. Exactly. But even if this court decides not to certify this question that's why I'm here today saying you know presenting to you all of this case law that we will kill us. Let me stop you there. I am the new person on this case and I don't index necessarily miss out that that I was not part of the earlier panel. But here I am now getting back to sort of the focus of one of the earlier panel. And I'm going to ask a couple of further questions by Judge Higginson. As I understand this case the issue you need to win on has already been resolved against you without it being certified based on phrasing that maybe you are saying is tentative in a way. What I heard from your early part of your argument is you now are using some things that perhaps weren't argued in Butler. And so we need to revisit this whole issue of duty. I don't know if that's a winner or not but is that basically where you are that despite that there is this precedential holding presidential for the Fifth Circuit not for Louisiana courts that you don't have a duty in this situation and no authority was discovered at that time. Are you basically saying you get a do over on that because you now have new authority. No Your Honor. I'm saying that this court in its ruling in Butler left that question that question remain open. Why does it remain open. What language of the opinion left it open. It resolved it against you on that appeal. In the language of opinion left it open because it said that this court said I believe along the lines of it was unaware of any case law. If you're relying on that I don't know if he was unaware. But anyway there was no authority was located discovered could be found and you've been diligently searching I guess. I think it's a pretty steep hill for you to climb that you've got a few new authorities you want to talk about any other issues in this case you have a few minutes left. Yeah. So first to close off on this duty question we believe that we cited cases that support the policy in Louisiana that you look to the circumstances of each case to determine whether or not the defendant used the proper standard of care meaning whether or not engaging in his activity. He used reasonable care to present to prevent injuries to others like the best new authority because you say you found new authority. I think Davis versus wit is it's a Louisiana Supreme Court Davis versus what versus wits and it's not in our memo. It's a Louisiana Supreme Court that supports the policy that we look to the circumstances of each case which the court did their court looked at the circumstance circumstances of that case. The sheriff deputy pulled over an 18 Weller then the sheriff deputy lets the 18 Weller leave. And when 18 Weller leaves the shoulder of the interstate or the roadway it enters into a lane of traffic and causes a collision. OK. The plaintiffs brought suit against the sheriff the sheriff's department and the court looked to see whether or not under the circumstances of that case the sheriff's department used reasonable care. In that case the court found that that they could not have anticipated certain things but but supported the policy that you look to the circumstances of each case. And if under these circumstances that this defendant could have used reasonable care to prevent this injury and failed to do so then it was a breach of their duty to use reasonable care to prevent injury to others like in our case. We alleged that the defendants failed to use reasonable care to prevent injury to our to the plaintiffs and failed to use reasonable care meaning they failed to repair certain pipes that a chemical was passing through it and you was was hazardous. They failed to make sure that the tanks had caps the tanks that were storing these chemicals had caps on them to prevent this chemical from releasing into the air a chemical that they knew was a hazardous risk to the health and safety of the plaintiffs and reasonable care. All reasonable care or their standard of conduct would have been to make sure that the pipes had been repaired and that there were caps on these containers and all of the other things that we said that they failed to do your argument isn't about excessive toxic air emission. No no and it's about pipe caps. It's about defects and defects on the premises and the defendants felon to use reasonable care felon to let it cause excessive emissions into the air and exposure to those emissions is would cause the plaintiffs injuries. But now in your reply brief you're you are you are stating clearly you are not saying that they exceeded EPA or NADA thresholds. So we're in a reply brief. All we're saying is that when we cite those thresholds it's under the section that says that says the defendants knowledge of the hazardous risk which is citing those thresholds to to argue that they had knowledge of the risk of these exposed and they and they failed to exercise reasonable care. Well counsel I guess that is the only issue you'll discuss. Have a seat. May it please the court. I'm James Heilman on behalf of the appellees EI DuPont and DuPont performance elastomers. The district judge correctly characterized this case as deja vu all over again and it really is an attempt at a redo of the Butler decision and in fact an attempt to avoid federal jurisdiction altogether through improper jointer. How tentative would you say our colleagues decision was in Butler. I'm sorry. How tentative would you say it was. I would not describe it. Wouldn't embrace that terminology. It does seem to me that it was a holding by this court that no authority presented to us would support the claim of the plaintiff on this duty. And I don't know how you take that to mean on how it can be. We have a rule of orderliness. Previous panels control later ones. Does that somehow release that opinion from not controlling so long as you can find a new authority to wave in front of us. It is not your honor. And for exactly the reason you said that that decision have any particular authority for either side of that proposition or either answer to that proposition. My time here I don't quite recall seeing something like this. And we did cite authority in our brief your honor for the fact that decisions of this court are binding on successive panels. But the decision was that because the request to send it to Louisiana Supreme Court was sua sponte i.e. me then we weren't going to do that. But we can still certify to Louisiana Supreme Court right now that it's been asked for. You can your honor but I think that. And why wouldn't we. Because I think that would in essence be overruling the Butler decision for this reason. The allegations of Butler are the exact same as allegations here. But I mean the thing is Louisiana Supreme Court could decide a random case tomorrow that has nothing to do with you know the not Butler not Acosta. Just a random case that's on the same point and go the other way and that would overrule Butler. I mean the fact is it's a state law question. We're the eerie folks. And so a Louisiana Supreme Court decision on point can change it. That is relevant. Right. Well we don't have that here. And also I'm just saying that's true though. That's true. But I do want to make it not the ultimate deciders of state court issues of state law issues. That's true. We can decide it. I understand the rule of orderliness all of that. I'm just saying that if Louisiana Supreme Court comes out a different way we are bound by that. They decide their own state law. That's true Your Honor. But I do want to clarify something about the Butler decision. It wasn't an eerie issue as the court said in that case. It was a straightforward application of federal pleading standards. There was no eerie guess about Louisiana. There was no eerie guess in that case at all about Louisiana law for the reason that Louisiana law is clear that you need to allege a specific standard of care. And there's no specific standard of care. But I mean there is that discussion about well it's a little unclear and so on and so forth. And so to me we can debate whether that's an eerie guess or not. But if Louisiana would require you know the things that were pled would say that was a cause of action. Then I mean that's getting very close to it being state law. But the court ultimately addressed that issue by saying we don't have to address it in Butler because it is a straightforward federal pleading issue. And pleading issue on state law. So I mean it's still I realize that we're the ones who decide pleading. But the state decides state law. And in saying we're not going to certify it, they didn't say because we don't have to. They said because it's sui sponte. So we're just going to put that off in the bucket. That's where I quibble, Your Honor. It wasn't only because it wasn't sui sponte. It was because you didn't have to reach this issue. There's kind of two issues. There's one, have you alleged any specific standard at all? That's clear Louisiana law for a negligence claim you have to allege a specific standard. And then there would be a separate question. If they had alleged a specific standard, is that a duty that Louisiana law recognizes? And I think what the court was saying is Butler is you don't even get to that step because they haven't alleged anything. But I mean the problem to me those are very much linked. Like the notion that you have to plead X, okay, but it still has to be state law what X is. So to me the notion that this is a purely federal question in this, you know, diversity jurisdiction case, you know, I think that's a little hard for me to follow. But hey, you know, I realize I was not in the majority on that point. So I'm bound by the precedent. And so my only question is whether we should certify to Louisiana Supreme Court or not. And again, for the same reasons I think that would be in essence overruling Butler since the allegations here are the same. We just heard from my friend on the other side was again pointing to the same allegations he made in Butler which are to this universal duty language and to use reasonable care to avoid injury to others. And that's exactly what this court said in Butler was insufficient to state a specific standard. You didn't hear anything new. There are no specific allegations of a standard. He's not pointing to the NADA report just like in Butler they weren't pointing to that. And they're not in his brief in here today he's not identifying any other specific standard. So the allegations are the same as in Butler. It's the same case, the same defendants, same facts, same set of. So why do we even care or need this indicative ruling regardless of who would make it? But I guess I'm a little unclear on why we need an indicative ruling when this is all sort of a purely legal question. And I don't think you do, Your Honor. We, you know, as kind of an abundance of caution we made that motion to the late Judge Feldman and we brought that to this court's attention through Rule 12.1. But I agree, I think you can just affirm for the reasons that we've laid out in our brief. Was that opposed or not? It was not opposed, no. They did not oppose the indicative ruling? I'm sorry, they didn't oppose the Rule 12.1. They filed a one or two-page opposition to our Rule 62.1 motion that Judge Feldman passed. Okay, just send it back. So then what is your answer to the question, the very sad, tragic passing of Judge Feldman? What then is the, where are we on an indicative ruling when we don't have that judge anymore? Honestly, I don't think it makes a difference one way or the other because I think Judge Ash would also be bound by this court's Butler decision which for the reasons we argue in here before this court now. But isn't it bound by the indicative ruling? I'm not sure that it would be bound by the indicative ruling. Okay. It doesn't, doesn't Rule 63 deal with this? It's when a judge is unable to continue. Yes, and it's just like any. We've got settled on that. Any decision of a district court, you can always reconsider its decision anyway. Exactly, but it's not moot and it's not a nullity. It's just Judge Ash would have the benefit of Judge Feldman's, close to his last work product on a case he knew very well, but he wouldn't have to follow it. I think that's exactly right, Your Honor. But as for the reasons I said, I think he would have to come out the way we are urging because of Butler, because it's the same allegations. It's the same claim. There's still no allegation of duty and therefore I think that that controls here. The bottom line is this case really is an attempt to redo what the plaintiff lost in the Butler case. In fact, the case history here is pretty informative. The case was filed in July of 2020, only a few weeks after Judge Feldman had dismissed these allegations in the Butler case in May of 2020. And to get to the jurisdictional point, in the Butler case in May of 2020, Judge Feldman had dismissed claims against the two Louisiana state agencies, the Department of Health and the Department of Environmental Equality, saying that bringing claims against state agencies for private emissions ventures into absurdity. And only a few weeks later, these plaintiffs, represented by the same counsel who represented the plaintiff in Butler, brought this case in state court, despite having a ruling in hand saying that this wasn't enough to state a claim against the Department of Health and the Department of Environmental Equality, brought claims against those entities in what I think is a clear attempt to try to avoid federal jurisdiction and to try to relitigate this issue that they had lost on in Butler. But fortunately, the improper joinder rule addresses that issue, and as late Judge Feldman determined, those claims were, just as they were not well stated in Butler, were not well stated in Butler. If we do look to Louisiana's Rule 12 for certification, would you quibble with how they're phrasing the determinative question of law in their reply brief? Would you want to participate in how to phrase any... I think we would, Your Honor. You know, we were causing this distinction between Butler here and that there wasn't a request there. There really wasn't a request here for certification either until the reply brief. So we haven't had any chance to weigh in on that. But the rule allows parties to stipulate together, and am I right that it would encompass the whole kit and caboodle, right, including the prescription issue you lost? I think it very well could, Your Honor. That's right. Now, again, for all the reasons... Well, we would have to decide what was unsettled areas of state law and it seemed to me, from my less experience with this case and the two of these, that the greater uncertainty was not on prescription. So we would have to make a decision, and you would have to convince us that we are not at all certain that we're going to go that direction. But we really would have to conclude that they are sufficiently unsettled to impose upon Louisiana court. I think that's right, Your Honor. And, you know, overall, our view is that there isn't... So it's not a matter of turning the whole case over to them. We really need to identify what limited part of this case makes any sense to certify. And what that close question is. And discussing the particular framing, I mean, the question of Louisiana law that was applied in Butler and that applies here is, do you need to allege a specific standard of care? I don't think that's a close question under Louisiana law or an unsettled question. Every case that they cite refers to the fact that you need to allege a specific standard of care. Is my memory correct that the original complaint did allege? EPA standards, but then that was removed? And Judge Feldman in Butler... There are allegations about the NADA report, and they remain in the amended complaint as well, but they're not alleged as a duty of care, and the plaintiffs have certainly disclaimed that in the reply brief. They make no claim and are quick to... But do you remember what I'm saying about the First Amendment complaint actually removed? Yeah, there did... There are still allegations, though, about the NADA in the amended complaint, but they're not alleged as... On this exact plant and these neoprene emissions, how much related litigation is going on in state court where state law will be applied? Are there various cases there? There are various cases currently in state court. There's another case pending in federal court. So there are some other litigation, but again, the state law issue is whether or not you have to allege a specific standard. I don't think that's an unsettled question. In fact, the case that my friend on the other side mentioned, Davis v. Witt, is a case that they cite in the Butler and that this court specifically addressed in the Butler decision. It's footnote 25 of the Butler decision. That's not new authority either. So there is no new authority that they are pointing to to explain why there is some duty here. The allegations being made here are the same as the allegations that existed in the Butler case, and they're these general allegations of a universal duty or to avoid... Take reasonable care to avoid injury to others, and that's exactly what this court said. It was insufficient. It said, while Louisiana law does impose a universal duty on defendants and negligence actions to use reasonable care, plaintiffs are still required to assert a specific standard of care. That's the question of Louisiana law. That's the issue. I don't think that warrants certification because there is no dispute about that under Louisiana law. Davis, Rando, Rathy, Boykins, all the cases they cite about duty, they all state the elements of a negligence claim under Louisiana law, and they very clearly say the first element is you have to allege a specific standard of care. I don't think that's an unsettled... In air pollution cases, are there many specific standards of care in terms of OSHA, EPA, industry? Regulatory permits. There are many things you could point to  that this is why you've breached a specific duty that you owe. These are all regulated entities. They have permits that regulate the amount of emissions they can have. There are numbers like the EPA that are reported, but we don't think that... The reason Judge Feldman rejected that is because it very clearly states it's not a regulatory limit, so I don't think that would suffice. But there are other numbers they could have tried to point to or choose to point to. I think it's clear they did not because they can't allege a breach of any of these duties, whether it be emissions or unreasonably dangerous emissions, but without identifying any specific standard of care as required by Louisiana law. Again, I think this case really is an attempt at a do-over. It was an attempt to improperly join two parties to avoid federal court because the decision, the outcome was preordained by a previous case. Now that we're in federal court, we're not hearing anything new. We're hearing the same allegations about the duty that they're alleging, and this court very clearly stated that that's not enough. I think it was telling when you asked, are there any new authorities? To be clear, I don't think you can just come back into federal court again and try to point to new cases and therefore get a do-over on a case that's controlling, but they don't have any new authority. The case they pointed to, Davis, is a case that they cited before and was already addressed by this court in Butler. I'm happy to answer any questions the court has about that or if the court has any other questions, I think that's what I'd like to address. I don't have anything, counsel. Thank you. Thank you, Your Honor. Not quite. Oh. You can make it a tandem argument if you want. May it please the court, James Percy on behalf of the defendant, Apelli Denka. I have thrown my presentation out to respond to the questions that the panel has asked of the previous speakers. First of all, with regard to the indicative ruling, that has nothing to do with Denka. Denka's decision in Butler is now final. It did not go back to the district court. Denka was dismissed on a Rule 12b6 motion. That was affirmed by this court in the decision in Butler. And that has not gone any farther. And the time periods have now run. So that decision, as far as Denka is concerned, is final. So the indicative ruling issues I just want to point out for the court have nothing to do with the allegations in this complaint or in Butler with regard to Denka. And so I'll address the very unique claims that are made against Denka in plaintiff's complaint. I mentioned this in our briefing, that numerous of the claims made against Denka have not been appealed. Any request for appeal or reversal of the decision to dismiss those claims by the district court, those claims for appeal have been waived and abandoned. The only claims that have been preserved by the plaintiff against Denka in this application are counts one and two. And they're very, very specific allegations and claims and those counts are very specific. It's an article 2315 claim for negligence against Denka and an article 2317.1 claim against Denka. And that's the defects claim that plaintiffs counsel. And I'm going to address that very briefly, Your Honor. Those are the only claims that are preserved. Everything else has been waived on appeal. At the very least, the dismissal of those claims against Denka should be affirmed by the court. They have not been appealed. And that includes the claim for injunctive relief. The court will note, we pointed this out in brief, that the plaintiff in original briefing and in reply does one sentence on the injunctive relief. No citations to any authority, no explanation to the court about why that claim should survive, what the standards of alleging that claim might be, and what facts were alleged to support the claim. We have argued, on the other hand, all of the things that are deficient in that claim regardless. One sentence, that claim should be dismissed as well. But all of the other claims, products liability, every time Denka is mentioned in a different count, those claims have been waived. The question arises, is this the same, are these the same allegations as in Butler? We, on behalf of Denka, at the district court, and this court is aware of it, we outlined, we provided a chart to the court. Allegations in Butler, allegations in Acosta. The very simple answer is, these are precisely the same allegations. Precisely, almost verbatim. Has he abandoned, has plaintiff abandoned any claims with regard to the standard or the excessive? They have not. This complaint in Acosta is replete with the claim that these were excessive and therefore unreasonable emissions. The problem with the use of that word and the problem with all of the allegations in the complaint is very simple. Once you use that term, it exceeds what? It raises the question, in excess of what? What is the standard? And reasonableness, as this court has already observed, is a conclusory allegation. It is not a fact. There are no facts pled in this complaint, just like there were no facts pled in the Butler complaint to establish more than the conclusory standard of care, use of reasonable care. And plaintiff responded to that. What is the standard of care? You must use reasonable care. If I filed a complaint, I want money from that guy because he didn't use reasonable care and I was injured. This court would throw that out. Any district court, any state court under Louisiana state law would throw that out. And with all due respect, that's what we're dealing with here. You emitted this and you failed to use reasonable care. That's a conclusory allegation. That is not a fact. That doesn't establish a standard of care, just as this court found us to DENCA in its Rule 12b-6 affirmance in the Butler case. And finally, with regard to defects, counsel has now suggested, my friend Mr. Russell has now suggested, we're making a defects claim under Louisiana law and that's count two, as I mentioned. Under Louisiana law, the Louisiana courts have held that for a claim under Article 2317, the standard is a negligence standard. The courts in Louisiana have already said that there is no different standard. It's a negligence standard. That's what must be applied. So for all of the reasons, I apologize Your Honor, for all of the same reasons we ask that the court affirm this dismissal. Thank you. And I'll be happy to answer any questions. Thank you, Your Honor. So the appellees are here today suggesting to the court that the plaintiffs in their complaint just made these broad, general, blanket, conclusory allegations that they failed to exercise reasonable care. That's simply not true. The plaintiffs alleged specifically how they failed to exercise reasonable care. They failed to warn the plaintiffs about the hazardous risk associated with exposure to chloroprene after knowing that information. They failed to warn the plaintiffs or provide notice to the plaintiffs of the excessive emissions in the air and their exposure to those chemicals. We allege specifically that they failed to repair certain pipes that were leaking chloroprene, that they failed to conduct inspections and provide certain calculations to make sure that high emissions of chloroprene weren't being emitted in the air to eventually expose the plaintiffs to hazardous concentrations of chloroprene. We made specific allegations of how they failed to meet a standard of care. And the standard of care that we have alleged in our complaint was to use reasonable care. That is the standard of care that's alleged. And we allege that over and over, and we allege that with specificity. That they failed to use reasonable care and that they failed... Is there anything different in your Acosta pleadings than the Butler complaint? Absolutely, especially with respect to DuPont. In DuPont, before we came... Remember, we've done no discovery in this case. But after we filed our Butler complaint, between the time we filed the Butler complaint and the time we filed the Acosta complaint, we came across some document that it was like some manufacturing agreement that rose question as to whether or not DuPont had ever really sold the unit where the chloroprene was being produced or neoprene was being produced, whether or not they had really ever sold it or even stopped manufacturing DuPont itself, whether it had even stopped manufacturing in that unit, or whether or not they were just leasing the unit to Denka. So in our new complaint, never do we allege, unlike in Butler, that ownership passed from DuPont to Denka. But you've still got this core issue that the Butler majority had a concern about, which is did you plead specific enough about what it is that DuPont and Denka were doing wrong, regardless of the timing. You won on the timing, but what they'd done. Yes, and we added... I mean, you can tell just by the page length that there are a lot more allegations, and we added specific allegations. Because they had made that argument in Butler, even although we felt that we made specific allegations, but we added... So what specific allegation would be different than Butler so that you don't... If we're applying Butler, which we have to, if we don't certify the question, that you don't lose? What is it that you win on here that you lost on in Butler? Well, I believe that we made specific allegations about their failure to use the reasonable care, like specific to pipes, leaking pipes, and performing certain calculations that are required under Louisiana statute and conducting specific inspections to make sure that the pipes that were transporting the chemicals and the tanks that were holding the chemicals were actually capped. So, yeah, we made many... They found certain allegations. They cherry-picked certain allegations from the Butler petition, and what, it's maybe three pages that they found total, to show, to say, hey, these allegations are the same as those that were made in Butler. But if you look at the context at the allegations in Acosta, they're not mirror images of each other. That's what the government thought they were. And that's why we appealed that ruling, because we don't believe that that is true. Okay, well, you are saying there's just a lot different new stuff they've cherry-picked. Why doesn't that mean you would want a remand so the intervening Fifth Circuit published decision dividing us on multiple issues could be assessed by the district court as to your case? Because it seemed like, in this court's latest ruling in Butler, that the question as to whether or not there is a duty, a duty was owed by Dinka and DuPont remained open. So we think it would be best to certify it to Louisiana Supreme Court to address that issue. All right, counsel. All right, thank you. Thank you, Your Honor.